IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO:

JERRY LYNETTE CLARK as Personal
Representative of the Estate of JALEN MAYS,
on behalf of the Estate and its lawful survivors,
to wit: J.LM, surviving son, L.M., as surviving
son, K.S., surviving daughter, and C.M.,
surviving daughter,

    Plaintiff,

vs.

The CITY OF JACKSONVILLE, FLORIDA,
a political subdivision of the State of Florida,
THE JACKSONVILLE SHERIFF'S OFFICE,
an Agency of the Consolidated City of Jacksonville,
MIKE WILLIAMS, in his official capacity as
Sheriff of the Jacksonville Sheriff's Office,
OFFICER MATTHEW REDDISH, OFFICER
STUART MADDOX, and OFFICER KATHRYN
YOUNGBLOOD,

    Defendants.
_____/

**COMPLAINT**

    Plaintiff, JERRY LYNETTE CLARK, as Personal Representative of the Estate of JALEN MAYS, by and through the undersigned counsel, hereby sues Defendants, THE CITY OF JACKSONVILLE, FLORIDA, THE JACKSONVILLE SHERIFF'S OFFICE, MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office, OFFICER MATTHEW REDDISH, OFFICER STUART MADDOX, and OFFICER KATHRYN YOUNGBLOOD, and states the following in support thereof:

    1.    This is a civil rights action, in which Plaintiff, JERRY LYNETTE CLARK, seeks relief through 42 U.S.C. § § 1981, 1983, 1985 and 1988 for injuries sustained due to the violations

of the decedent's, Jalen May, civil rights, as guaranteed and protected by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the Laws and constitution of the State of Florida.

2. Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, together with such other and further relief as this Court may deem just and proper.

## PARTIES, JURISDICTION AND VENUE

3. Jerry Lynette Clark ("Ms. Clark") is the personal representative of the Estate of Jalen Mays, deceased. Ms. Clark is the mother of Jalen Mays, a citizen of the United States, over the age of eighteen years and otherwise *sui juris*. Ms. Clark brings this action in her capacity as Personal Representative of the Estate of Jalen Mays and on behalf of Mr. May's survivors.

4. At all times material hereto, Jalen Mays, the decedent, was a citizen of the United States and resident of the State of Florida. On the date of his death, Mr. Mays had the following statutory survivors:

   a. J.LM, his surviving son, who has suffered and will continue to suffer the loss of his father's support and services and parental companionship, instruction and guidance, and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

   b. F.M., his surviving son, who has suffered and will continue to suffer the loss of his father's support and services and parental companionship, instruction and guidance and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future;

    c. K.S., his surviving daughter, who has suffered and will continue to suffer the loss of her father's support and services and parental companionship, instruction and guidance, and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future; and

    d. C.M, his surviving daughter, who has suffered and will continue to suffer the loss of her father's support and services and parental companionship, instruction and guidance and has experienced mental pain and suffering in the past and will continue to suffer such pain in the future.

5. At all times material hereto, Defendant, the City of Jacksonville, Florida ("The City of Jacksonville") was and is an agency of the consolidated local government of Duval County, Florida and is a political subdivision of the State of Florida located in Duval County, Florida, organized and existing under the laws of the State of Florida, and responsible for the public safety within its boundaries.

6. At all times material hereto, Defendant, Jacksonville Sheriff's Office ("JSO"), was and is an agency of the Consolidated City of Jacksonville, Duval County, Florida, and responsible for the public safety within its boundaries.

7. At all times material hereto, Defendant, Sheriff Mike Williams ("Sheriff Williams"), in his official capacity as Sheriff of the city of Jacksonville, Florida, was the head of the JSO responsible for the supervision, training, instruction, discipline, control and conduct of its police officers with respect to 911 dispatch, searches and seizures, detainees and arrestees.

8. At all times material hereto, the City of Jacksonville, JSO and Sheriff Williams had the power, right, and duty to train and their officers, agents, and employees to conform to the

United States Constitution and ensure that all orders, rules instructions and regulations promulgated for the JSO were consistent with the United States Constitution.

9. At all times material hereto, Defendant, Officer Matthew Reddish ("Officer Reddish") was and is an Officer who worked as an employee of the JSO. Officer Reddish is sued in his individual capacity for damages. Officer Reddish is over the age of eighteen years, works in Duval County, Florida and is otherwise *sui juris*.

10. At all times material hereto, Defendant, Officer Stuart Maddox ("Officer Maddox") was and is an Officer who worked as an employee of the JSO. Officer Maddox is sued in his individual capacity for damages. Officer Maddox is over the age of eighteen years, works in Duval County, Florida and is otherwise *sui juris*.

11. At all times material hereto, Defendant, Officer Kathryn Youngblood ("Officer Youngblood") was and is an Officer who worked as an employee of the JSO. Officer Youngblood is sued in her individual capacity for damages. Officer Youngblood is over the age of eighteen years, works in Duval County, Florida and is otherwise *sui juris*.

12. This action is brought pursuant to Florida's Wrongful Death Act, Fla. Stat. §§ 768.16-28, as well as 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of law, of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, which authorize the award of attorney's fees and costs to a prevailing party in an action brought pursuant to 42 U.S.C. § 1983.

13. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1331,28 U.S.C. § 1343(a)(3) and (4), § 1367(a) and the doctrine of supplemental jurisdiction.

14. Venue lies in this district pursuant to 28 U.S.C. § 1391, as the acts or omissions giving rise to causes of action set forth in this Complaint occurred in the United States Middle District of Florida.

## GENERAL ALLEGATIONS

15. This action is brought by the Personal Representative of the Estate of Jalen Mays pursuant to Fla. Stat. § 46.021 and Florida Wrongful Death Statute § 768.16-26 for damages suffered by Jalen Mays during his lifetime, and by the Estate of Jalen Mays for his death.

16. On or about the afternoon of April 30, 2019, Jalen Mays called the Jacksonville Sheriff's Department from a shopping plaza located near 1585 Lane Ave South, Jacksonville, FL 32210 (the "Plaza") to report a concern.

17. Several Officers arrived at the Plaza, including Officers Reddish and Youngblood, who spoke with Jalen and had medics check his vitals.

18. Although he appeared to be mentally ill, the Officers decided that Jalen was not a risk to himself or others and left him in the Plaza.

19. Later that evening Jalen was a patron at a convenience store located inside of the Plaza, Lane Avenue Food Store (the "Store").

20. While inside the Store, Jalen was provoked into a mild altercation with another customer.

21. The owner of the Store, who knew Jalen, reluctantly called the police to break up the scuffle.

22. Despite calling the police, the Store owner declined to press charges against Jalen, he only wanted Jalen trespassed from the property.

23. By the time Officer Reddish, the first officer to the scene, arrived the Assailant had already fled the Store.

24. Jalen, who remained inside of the Store, was arrested.

25. Officer Maddox, the second officer to arrive on the scene, assisted Officer Reddish in handcuffing and detaining Jalen inside of the Store.

26. According to the officers, Jalen made a comment while being detained that led to him being Baker Acted and an ambulance was subsequently called to take him to a hospital that would accept Baker Act patients.

27. Jalen was brought outside by Officers Reddish and Maddox and placed faced up on the pavement in the parking lot in front of the Store. Initially, the Officer's allowed Jalen to lie on his back and held his legs in the air to ensure that he was subdued.

28. Despite Jalen being subdued and no threat to himself or anyone else, Officers Reddish and Maddox subsequently turned Jalen onto his stomach, folded his legs and pinned him to the ground.

29. Officer Maddox pinned Jalen in said hold for over six minutes putting his weight on Jalen's handcuffed and contorted body.

30. Officer Youngblood arrived at the scene and witnessed Officer Maddox pinning Jalen to the ground.

31. Jalen cried for help, but his cries were ignored by each of the Officers, Reddish, Maddox and Youngblood. Jalen's cries continued to get weaker and weaker the longer he was pinned to the ground.

32. Officers Reddish and Youngblood were each in a position to intervene on Jalen's behalf and failed to do so despite witnessing Officer Maddox pin Jalen to the ground and Jalen's rapidly declining physical condition and hearing his cries for help.

33. Jalen was not resisting arrest while Officer Maddox pinned Jalen's body to the ground for over six minutes, restricting his airflow and breathing despite Jalen not being an immediate threat to anyone.

34. As a result of the hold, Jalen went into respiratory arrest that led to a cardiac arrest from which he would never recover.

35. Jalen was pronounced deceased two days later on or about May 2, 2019.

36. Ultimately, Jalen Mays died as a result of the unlawful acts and omissions described herein by Defendants, The City of Jacksonville, JSO, Sheriff Williams and Officers Reddish, Maddox and Youngblood.

## THE CITY OF JACKSONVILLE, AND JSO'S HISTORY OF POLICIES AND PRACTICES THAT VIOLATE THE CONSTITUTIONAL RIGHTS OF SUSPECTS IN DETENTION

37. In May 2010, a JSO Officer fractured multiple facial bones of David Kemp when the officer violently struck Mr. Kemp as he laid on the ground in compliance with the officer's commands to do so.

38. In March 2012, JSO Officers questioned Kyle Fowler concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the officers that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from them due to their behavior and told them he was not interested in speaking anymore. As he did so, the JSO Officers knocked Mr. Fowler through a closed metal gate and onto the ground. The

Officers then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him and effectuate his false arrest, injuring him in the process.

39. In June 2013, a JSO Officer violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident.

40. In November 2013, JSO Officers tackled Michael P. Carey and struck his torso, hips and neck resulting in a fractured pelvis, broken ribs, punctured lung, internal bleeding and contusions during a traffic stop. Mr. Carey was unarmed and had his hands in the air.

41. In November 2014, a JSO Officer violently slammed Deandre Ezell's head into a concrete wall while Mr. Ezell was handcuffed.

42. In July 2015, JSO Officers punched Kelli Wilson in the face after she refused their unlawful commands to hand over her cell phone. The Officers then proceeded to violently take Wilson to the ground, pulling her hair and attempting to rip her arms out from under her. Ms. Wilson was arrested for resisting without violence. The charge against Ms. Wilson was dismissed. The JSO Officers were not disciplined or reprimanded for their use of force against Ms. Wilson.

43. In July 2015, Victo Emanuel LaRosa, III was shot in the back by JSO Officers as he ran unarmed and was not posing an immediate threat anyone.

44. In December 2015, a JSO Officer slammed Casey Morse on the floor breaking his collarbone in three places when called 911 to seek emergency assistance after his sister's death.

45. In April 2016, JSO Officers violently took down John Blessing while arresting him. The force caused Mr. Blessing to lose 75% of the function in his arm. The charges on which Mr. Blessing was arrested for, resisting without violence, disorderly intoxication, and battery, were ultimately dropped after the Court found the JSO Officer did not investigate the alleged crime or establish probable cause. The JSO Officers involved were not disciplined or reprimanded for their actions.

46. In April 2016, Mayra Martinez was at her place of employment when JSO officers arrived after calls about her intoxication. JSO Officers slammed her into the pavement and punched her numerous times. Upon arrival at the Pretrial Detention Facility, JSO Officers hit Mayra Martinez with a closed fist in her stomach, chest, and face, knocking her unconscious. Ms. Martinez was handcuffed during the encounter.

47. In June 2016, JSO Officers shot Keith Crowder two times as he existed his vehicles with his hands empty and raised above his head during a traffic stop.

48. In April 2017, Daniel Nyman was seeking treatment at UF Health Jacksonville when a JSO Officer spat at Mr. Nyman, charged at Mr. Nyman, threw him to the ground, shoved Mr. Nyman's jaw into the ground with his knee, and then flipped Mr. Nyman over and kneed him in the back. Mr. Nyman required repair of his previously treated broken jaw and five days in the hospital as a result of the attack. The JSO Officers involved were not disciplined or reprimanded for their use of force against Mr. Nyman.

49. In April 2017, Connell Crooms was participating in a peaceful protest at Heming Park Plaza in Jacksonville Florida, when a counter-protestor reached his arm over the shoulder of a JSO Officer and stuck his middle finger in Mr. Crooms' face. Rather than apprehend the aggressor, JSO Officers threw Connell Crooms to the ground, struck him repeatedly in the back and face, and pressed a Taser to his back, all of which caused Mr. Crooms to lose consciousness and require hospitalization. Mr. Crooms is deaf and did not resist or disobey any of the officers' commands.

50. In June 2017, Jonathan Williams was pulled over by JSO Officers, who placed one handcuff on Mr. Williams before punching him twice in the face despite the fact he was not resisting. The JSO Officer proceeded to throw Mr. Williams to the ground punching him in the back and kneeing him in the head, Mr. Williams suffered fractures in the right orbital wall, left inferior, and medial orbital

wall of his skull, as well as soft tissue swelling and hematoma in the back of his head. The JSO Officers involved were not reprimanded or disciplined.

51. In October 2017, JSO Officers responded to a Walmart Loss Prevention Office for a potential shoplifting incident involved a male individual. While effectuating his arrest, an officer grabbed Diana Murray, the male individual's significant other, by her neck and slammed her against a wall, then a bench before again slamming her into the wall and bench. Both Ms. Murray and her significant other were cooperative with officers throughout the encounter. The JSO Officer involved was not been disciplined or reprimanded.

52. In November 2017, a twelve-year old child, D.M. III, was walking home from school when JSO Officers approached him. When he did not comply with their request to stop and instead continued walking to his mother JSO Officers slammed him on the ground. D.M. III suffered numerous fractures, a cervical strain, and a sprain. The officer involved in the use of force was not reprimanded or disciplined.

## CONDITIONS PRECEDENT, ATTORNEYS' FEES AND COSTS

53. The estate is entitled to bring the survivor and or wrongful death claims asserted herein, pursuant to 42 U.S.C. § 1988(a) and Florida law including, without limitation, Fla. Stat. §§ 46.021 and 768.16-26.

54. On or about September 23, 2020, the undersigned served Defendants, The City of Jacksonville, JSO and Sheriff Williams, with notice of the claims contained in this Complaint pursuant to the requirements of Fla. Stat. § 768.28.

55. As of the date of this Complaint, Defendants, The City of Jacksonville, JSO and Sheriff Williams, have not responded to the request for relief contained in the Six-Month Notice.

56. The Estate has retained the undersigned law firms to represent it in this action and is obligated to pay reasonable attorneys' fees and the costs associated with this representation.

57. All conditions precedent to filing this action have otherwise occurred, been satisfied or waived.

**COUNT I**
**VIOLATION OF CONSTITUTIONAL RIGHTS**
**PURSUANT TO 42 U.S.C. § 1983**
(*Estate of Jalen Mays v. The City Jacksonville, JSO and Mike Williams*)

58. Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 - 57 as if fully set forth herein.

59. At all times material hereto, the employees, agents and/or officers of Defendants, The City of Jacksonville, JSO and Sheriff Williams, including Officers Reddish, Maddox and Youngblood, were acting under the color of state law and pursuant to the policy, custom, and or usage of the City of Jacksonville and JSO.

60. The City of Jacksonville, JSO and Sheriff Williams, created and allowed policies, customs or usage whereby their police officers used excessive force detaining civilians and failed to give proper medical treatment to detainees that obviously required it, including the decedent, Jalen Mays.

61. The City of Jacksonville, JSO and Sheriff Williams, created and allowed policies, customs or usage whereby they failed to adequately supervise, discipline and train their employees, agents and officers, including Officers Reddish, Maddox and Youngblood, in the appropriate use of force and the appropriate manner in which to detain citizens that were not an immediate threat.

62. The City of Jacksonville, JSO and Sheriff Williams, through their policies, customs or usage, also hired officers who were substandard and or who were not properly trained and disciplined in the use of force and detention of civilians that were not an immediate threat, including Officers Reddish, Maddox and Youngblood.

63. The City of Jacksonville, JSO and Sheriff Williams ratified the misconduct of Defendants, Officers Reddish, Maddox and Youngblood, against Jalen Mays, by failing to conduct an adequate internal investigation into the subject incident, including the use of excessive force by the said officers.

64. The failure of The City of Jacksonville, JSO and Sheriff Williams to adequately implement policies and procedures, and properly hire, supervise, discipline, train and retain officers, including Officers Reddish, Maddox and Youngblood, in the use of force and the appropriate manner in which to detain citizens that were not an immediate threat once in custody constitutes deliberate indifference, willful conduct, and knowing conduct towards the public in general and specifically towards the decedent, Jalen Mays.

65. The employees, agents and officers of The City of Jacksonville, JSO and Sheriff Williams, including Officers Reddish, Maddox and Youngblood, through their above-described actions, deprived the decedent, Jalen Mays, of his rights, privileges and immunities in violation of his constitutional right to be secure in his person against unreasonable seizures, pursuant to the Fourth Amendment to the Constitution, not to be subject to cruel and unusual punishment, pursuant to the Eighth Amendment to the Constitution, and to due process, pursuant to the Fourteenth Amendment to the Constitution.

66. As a direct and proximate result of the Defendants', The City of Jacksonville, JSO, Sheriff Williams, misconduct described above, the decedent, Jalen Mays, endured pain and suffering, and sustained fatal injuries. The Estate of Jalen Mays has also lost prospective net accumulations and has incurred medical and funeral expenses due to Jalen May's injury and death.

WHEREFORE, Plaintiff, JERRY LYNETTE CLARK, as Personal Representative of the Estate of JALEN MAYS, demands judgment for damages against Defendants, THE CITY OF

JACKSONVILLE, JACKSONVILLE SHERIFF'S OFFICE and MIKE WILLIAMS, for the constitutional and civil rights violations set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

**COUNT II**
**VIOLATION OF CONSTITUTIONAL RIGHTS**
**PURSUANT TO 42 U.S.C. § 1983**
(*Estate of Jalen Mays v. Officers Reddish and Maddox*)

67. Plaintiff repeats and incorporate the allegations contained in Paragraphs 1-36 and 53-57 as if fully stated herein.

68. At all times material hereto, Defendants, Officer Reddish and Maddox, were acting under the color of state law and pursuant to the policy, custom, and/or usage set by the City of Jacksonville, JSO and or Sheriff Williams.

69. Officers Reddish and Maddox used excessive force, made unlawful and harmful physical contact with Jalen Mays and were deliberately indifferent to Jalen's medical needs in violation of his constitutional right to be secure in his person against unreasonable seizures, pursuant to the Fourth Amendment to the Constitution, not to be subject to cruel and unusual punishment, pursuant to the Eighth Amendment to the Constitution, and to due process, pursuant to the Fourteenth Amendment to the Constitution.

70. As a direct and proximate result of Officers Reddish and Maddox's misconduct, Jalen Mays endured pain and suffering, and sustained fatal injuries. The Estate of Jalen Mays has also lost prospective net accumulations and has incurred medical and funeral expenses.

WHEREFORE, Plaintiff, JERRY LYNETTE CLARK, as Personal Representative of the Estate of JALEN MAYS, demands judgment for damages against Defendants, OFFICER MATTHEW REDDISH and OFFICER STUART MADDOX, for the constitutional and civil

rights violations set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## COUNT III
## VIOLATION OF CONSTITUTIONAL RIGHTS
## PURSUANT TO 42 U.S.C. § 1983
**(*Estate of Jalen Mays v. Officers Reddish and Youngblood*)**

71. Plaintiff repeats and incorporates the allegations contained in Paragraphs 1-36 and 53-57 as if fully stated herein.

72. At all times material hereto, Officers Reddish and Youngblood, were acting under the color of state law and pursuant to the policy, custom, and/or usage of set by the City of Jacksonville, JSO and or Sheriff Williams.

73. Officers Reddish and Youngblood owed Jalen a duty to make reasonable efforts to protect him from Officer Maddox's use of excessive force.

74. Officers Reddish and Youngblood ignored the obvious signs that Jalen needed medical care demonstrating a deliberate indifference to a serious medical need despite their knowledge of the urgent need for medical care.

75. Officers Reddish and Youngblood's conduct was grossly inadequate.

76. Officers Reddish and Youngblood's failure to act as described herein constitute a deliberate indifference to Jalen's constitutional right to be secure in his person against unreasonable seizures, pursuant to the Fourth Amendment to the Constitution, not to be subject to cruel and unusual punishment, pursuant to the Eighth Amendment to the Constitution, and to due process, pursuant to the Fourteenth Amendment to the Constitution.

77. As a direct and proximate result of Officers Reddish and Youngblood's misconduct, Jalen Mays endured pain and suffering, and sustained fatal injuries. The Estate of Jalen Mays has also lost prospective net accumulations and has incurred medical and funeral

expenses.

WHEREFORE, Plaintiff, JERRY LYNETTE CLARK, as Personal Representative of the Estate of JALEN MAYS, demands judgment for damages against Defendants, OFFICER MATTHEW REDDISH and OFFICER KATHRYN YOUNGBLOOD, for the constitutional violations and civil rights violations set forth herein and for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

**COUNT IV**
**<u>NEGLIGENCE</u>**
(***Estate of Jalen Mays v. The City Jacksonville, JSO and Mike Williams***)

78. Plaintiff repeats and incorporates the allegations contained in Paragraphs 1-57 as if fully stated herein.

79. Defendants, The City of Jacksonville, JSO and Sheriff Williams, by and through their law officers, agents and employees, had a duty to use reasonable care when arresting or detaining civilians and in the exercise of deadly force.

80. Defendants breached said duties by, *inter alia*:

    a. Failing to adequately implement policies and procedures pertaining to use of force and or Baker Acting civilians;

    b. Failing to conform to policies and procedures of pertaining to use of force and or Baker Acting civilians;

    c. Failing to adequately supervise and reprimand staff for use of excessive force;

    d. Failing to adequately supervise and reprimand staff for failing to conform to policies and procedures pertaining to Baker Acting civilians; and

  e. Failing to properly train Officers, including Officers Reddish, Maddox and Youngblood, in the use of force, intervening to stop excessive force by a fellow officer; and or Baker Acting civilians.

81. As a direct and proximate result of the negligent misconduct of Defendants, The City of Jacksonville, JSO, Sheriff Williams and Officers Reddish, Maddox, and Youngblood, described above, the decedent, Jalen Mays, endured pain and suffering, and sustained fatal injuries. The Estate of Jalen Mays has also lost prospective net accumulations and has incurred medical and funeral expenses due to Jalen May's injury and death.

82. Defendants, The City of Jacksonville, and JSO, of the Consolidated City of Jacksonville, Duval County, Florida are vicariously liable for negligent misconduct of Defendants, Officers Reddish, Maddox, and Youngblood, performed within the scope of their employment.

WHEREFORE, Plaintiff, JERRY LYNETTE CLARK, as Personal Representative of the Estate of JALEN MAYS, demands judgment for damages against Defendants, THE CITY OF JACKSONVILLE, and JACKSONVILLE SHERIFF'S OFFICE of Duval County, Florida, for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

## COUNT V
## BATTERY
***(Estate of Jalen Mays v. Officers Reddish and Maddox)***

83. Plaintiff repeats and incorporates the allegations contained in Paragraphs 1-36, and 53-57 as if fully stated herein.

84. At the time of the subject incident, Officers Reddish and Maddox intentionally made harmful and unlawful contact with Jalen Mays.

85. Despite hearing Jalen's repeated pleas for help and recognizing that Jalen was

subdued and not a threat, Officers Reddish and Maddox employed unnecessary force by folding Jalen's legs and pinning Jalen until he went into respiratory, and subsequently cardiac, arrest.

86. Officer Reddish and Maddox's conduct was reckless or wanting in care, in bad faith, with a malicious purpose and or constitutes a conscious disregard and indifference to the life, safety and rights of others including, without limitation, Jalen Mays.

87. As a direct and proximate result of Officer Reddish and Maddox's misconduct, Jalen Mays endured pain and suffering, and sustained fatal injuries. The Estate of Jalen Mays has also lost prospective net accumulations and has incurred medical and funeral expenses.

WHEREFORE, Plaintiff, JERRY LYNETTE CLARK, as Personal Representative of the Estate of JALEN MAYS, demands judgment for damages against Defendants, OFFICER MATTHEW REDDISH and OFFICER STEWART MADDOX, for all damages allowed by law including compensatory damages, punitive damages, costs and attorney's fees.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues so triable.

Dated this 2nd day of May, 2021.

Respectfully submitted,

**Kai P. Thompson, Esq.**
Kai P. Thompson, P.A.
Tel: (786) 778-4986 | Fax: (786) 899-2091

By: */s/ Kai P. Thompson, Esq.*
Kai P. Thompson, Esq.
Fla. Bar No.: 121699
Email: Kai@KaiPThompsonPA.com
*Counsel for Plaintiff*

**Anthony C. Hevia, Esq.**
Hevia Law Firm
2525 Ponce de Leon Blvd.
Ste., 300
Coral Gables, FL 33134
Tel: 786-441-5120 I Fax: 786-743-5600
Anthony@hevialawfirm.com
susy@hevialawfirm.com
mariah@hevialawfirm.com